**William Morrison SMITH,
Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE,
Defendant-Appellee.**

No. 83–1446.

United States Court of Appeals,
Sixth Circuit.

July 10, 1984.

Decided Sept. 10, 1984.

22 (5th Cir.1983).)

Kathleen L. Bogas, Susan Fellman (argued), Detroit, Mich., for plaintiff-appellant.

Leonard R. Gilman, U.S. Atty., Ellen Christensen, Ellen Ritteman (argued), Asst. U.S. Attys., Detroit, Mich., for defendant-appellee.

Before MERRITT, JONES and WELLFORD, Circuit Judges.

MERRITT, Circuit Judge.

This appeal raises a question of first impression in handicap discrimination cases; namely, whether a plaintiff alleging a cause of action for employment discrimination against the Postal Service under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796i (1982), must exhaust administrative remedies before proceeding to federal court. We conclude that exhaustion is required.

### I.

Plaintiff Smith, who suffers from cerebral palsy, was employed by the United States Postal Service from 1964 until he retired in 1979 on disability. At that time, plaintiff indicated that he was retiring because his condition had worsened.

Two and one-half years later, plaintiff brought a lawsuit against the Postal Service for wrongfully terminating him on the basis of his handicap. It is undisputed that plaintiff did not present this claim of handicap discrimination to the Postal Service or its Equal Employment Opportunity Division at any time during or following his employment there. Plaintiff's initial cause of action was brought in a Michigan state court under the Michigan Handicapper's Civil Rights Act, MICH.COMP.LAWS ANN. §§ 37.1101–.1607 (West Supp.1984). The case was subsequently recast as an action under sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 & 794 (1982), and transferred to federal court in Michigan.

The Postal Service moved for dismissal on grounds that plaintiff had failed to exhaust administrative remedies as required by sections 501 and 505(a)(1) of the Rehabilitation Act. In response, plaintiff maintained that exhaustion is not required of suits brought under section 504 and 505(a)(2) of the Act. After a hearing, the District Court ruled that the exhaustion requirement applies to both section 501 and section 504, and entered an order of dismissal without prejudice. Plaintiff appeals from this determination.

### II.

#### A. Statutory Framework

The Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796i (1982), is a program designed to assist and protect the rights of the handicapped. Through it, Congress wanted to "develop and implement, through research, training, services, and the guarantee of equal opportunity, comprehensive and coordinated programs of vocational rehabilitation and independent living" for disabled persons. *See id.* § 701 (statement of purpose).

Title V of the Act prohibits federal agencies, federal contractors, and recipients of

federal funds from discriminating against the handicapped. Specifically, section 501(b), 29 U.S.C. § 791(b), requires all executive branch agencies and departments, including the Postal Service, to submit affirmative action plans for the hiring and advancement of handicapped persons. Section 503, 29 U.S.C. § 793, stipulates that all federal contracts contain a provision requiring the contractor to "take affirmative action to employ and advance in employment qualified handicapped individuals." Finally, section 504 of the Act, found at 29 U.S.C. § 794, declares Congress' intention that

[n]o otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

The 1973 Act did not create an express private right of action on the part of handicapped employees against federal government employers. At that time, the language of section 501 merely required that federal agencies submit affirmative action plans. *See Prewitt v. United States Postal Service,* 662 F.2d 292, 302 & n. 12 (5th Cir.1981) (discussing private right of action). Nonetheless, in a confusing series of cases, courts interpreting the Act gradually recognized an implied private right of action under section 504 for handicapped persons subjected to employment discrimination by certain recipients of federal funds, *see, e.g., Davis v. Southeastern Community College,* 574 F.2d 1158 (4th Cir.1978), *rev'd on other grounds,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), but not in other employment discrimination cases where the employer was a federal agency or department such as the Postal Service. *See, e.g., Coleman v. Darden,* 595 F.2d 533 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). The courts split on the question whether a private right of action was available under

section 503 for handicapped persons subjected to employment discrimination by federal contractors. *Compare Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir.) (finding no private right of action), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), *with Chaplin v. Consolidated Edison Co.,* 482 F.Supp. 1165, 1173 (S.D.N.Y. 1980) (recognizing private right of action). Further, they disagreed as to whether exhaustion of administrative remedies was a prerequisite to a section 504 cause of action. *Compare Doe v. New York University,* 442 F.Supp. 522 (S.D.N.Y.1978) (exhaustion required), *with Whitaker v. Board of Higher Education,* 461 F.Supp. 99 (E.D.N.Y.1978) (exhaustion not required).

Partly in response to this confusion, Congress amended the Rehabilitation Act in 1978 to create an express private right of action under section 501 against federal agencies and departments, including the Postal Service. This was accomplished by the Senate's addition of section 505(a)(1), which provides that

[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16) [Title VII], including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)), shall be available with respect to any complaint under [29 U.S.C.] section 791 [section 501] of this title....

29 U.S.C. § 794a(a)(1) (1982). Section 505(a)(2) goes on to establish an express private right of action against recipients and providers of federal assistance by creating an analogous relationship between section 504 of the Act and Title VI of the Civil Rights Act of 1964:

The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under [29 U.S.C.] section 794 of this title [section 504 of the Act].

29 U.S.C. § 794a(a)(2) (1982). In addition, section 504 was amended by the House to prohibit discrimination by federal agencies and the Postal Service as well as by recipients of federal aid. *See Prewitt*, 662 F.2d at 304–05 (discussing House and Senate versions of 1978 amendments).

### B. Exhaustion Requirement

Defendant argues that section 501 of the Rehabilitation Act supplies the exclusive jurisdictional basis for claims of handicap discrimination in federal employment. Therefore, defendant contends, the "remedies, procedures, and rights" of Title VII, which are expressly incorporated into section 501 actions through section 505, control, including the requirement of exhaustion of administrative remedies. The District Judge did not address this argument directly in his decision from the bench, although he implied that Congress' intent to allow section 504 to be used as a jurisdictional basis for employment discrimination claims was uncertain.

This question has since been settled by the Supreme Court. In *Consolidated Rail Corp. v. LeStrange*, — U.S. ——, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), plaintiff filed an employment discrimination claim against Conrail, a recipient of federal funds. Apparently, the issue of exhaustion was not raised in *LeStrange*, but the defendant did argue initially that section 504 does not create a private right of action for employment discrimination. The Supreme Court rejected this argument with the comment that "it is unquestionable that the section was intended to reach employment discrimination." *Id.* at ——, 104 S.Ct. at 1254 (footnote omitted). Thus there is nothing to prevent plaintiff from basing his employment discrimination claim on section 504 save defendant's further contention that that provision, like section 501, must be construed to require exhaustion of remedies.

Plaintiff concedes that section 501 requires exhaustion, but argues that section 504 does not. Specifically, plaintiff contends that section 504 actions are to be governed not by Title VII but by the "rem-edies, procedures, and rights" set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d—d–6 (1982).

Plaintiff's argument is based upon an imaginative reading of the Supreme Court's opinion in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), wherein the Court held that Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (1982), contains an implied private right of action. The *Cannon* Court found support for this conclusion in the fact that Title IX was patterned after Title VI, a statute which had consistently been held to contain such an implied right of action.

Plaintiff quotes at length from a footnote in *Cannon* in which the Court states that it has not required exhaustion in cases "where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administration process contemplated by the statute," and notes that neither Title IX nor its implementing regulations provide a mechanism for this sort of citizen participation. *Id.* at 707 n. 41, 99 S.Ct. at 1963 n. 41. Thus, plaintiff's argument goes, since the Supreme Court recognized in *Cannon* the kinship between Titles IX and VI and held that a private right of action could be maintained in advance of exhaustion under the former by analogy to the latter, and since Title VI is closely tied to section 504 through section 505(a)(2) of the Rehabilitation Act, it follows that exhaustion is not required under section 504. The problem with this argument is that there are significant differences between this employment discrimination action brought by a Postal Service employee against his federal employer under a statute which provides him with extensive administrative procedures to remedy the alleged wrong, and the situation in *Cannon*, which involved a sex discrimination action brought by a rejected applicant to a private medical school under a statute which provided no such recourse.

On the exhaustion question the legislative history of the Rehabilitation Act and

its 1978 amendments is helpful. *See Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (in determining whether exhaustion is required, court should first examine legislative intent). In amending the statute to incorporate expressly the "remedies, procedures, and rights" set forth in Title VII to redress handicap discrimination by federal agency employers, it is evident that Congress intended to invoke the legal principles applied in Title VII actions based on allegations of race, sex and national origin discrimination in employment, including the requirement that a claimant exhaust administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 2000e–16(c) (1982) (Title VII exhaustion requirement). The exhaustion requirement is part of a longstanding congressional policy favoring resolution of claims of employment discrimination through administrative conciliation rather than a formal adversary process whenever possible. *E.g., Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394 (3d Cir.), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1976). As Senator Cranston, the chief Senate sponsor of the 1978 amendments, explained, the express reference to Title VII in section 501 makes clear that handicapped employees have the right to sue federal employers under the Act "subject of course to the provision for exhaustion of administrative remedies and other rules for procedures set forth in Title VII." 124 Cong.Rec. 30,347 (1978) (remarks of Sen. Cranston). Thus Congress afforded handicapped persons with the same civil rights protection, on the same terms, as that enjoyed by other minorities employed by federal agencies.

Furthermore, we note that the Supreme Court reached essentially the same conclusion this Term in *Smith v. Robinson,* — U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which presented an analogous question concerning the proper interplay between section 504 of the Rehabilitation Act and the Education of the Handicapped Act (EHA). The plaintiff, a child who suffers from cerebral palsy, asserted claims for declaratory and injunctive relief based on state law, the EHA, section 504, and 42 U.S.C. § 1983. After certifying the issue to the Rhode Island Supreme Court, the District Court held that plaintiff was entitled to a free appropriate special education under state law, and thus found it unnecessary to reach the federal constitutional and statutory claims. In addition, the District Court determined that because plaintiff was required to exhaust his state administrative remedies before asserting the EHA claim, and because he had alleged colorable section 1983 and 504 claims, he was entitled to attorneys' fees for the procedures even though the EHA does not provide for fees.

The First Circuit reversed, holding that plaintiff's claim fell clearly within the comprehensive federal-state scheme set forth in the EHA for the provision of special education to handicapped children, and that Congress could not have intended its omission of attorneys' fees in the EHA to be rectified by reliance on the fee apparatus of section 1983 or the Rehabilitation Act. Affirming, the Supreme Court emphasized the contrast between the EHA's special role as a comprehensive remedial scheme designed to protect the educational rights of handicapped children, and section 504, which "simply prevents discrimination on the basis of handicap." — U.S. at ——, 104 S.Ct. at 3471. The Court concluded:

> Even assuming that the reach of § 504 is coextensive with that of the EHA, there is no doubt that the remedies, rights, and procedures Congress set out in the EHA are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the general anti-discrimination provision of § 504.

*Id.* at ——, 104 S.Ct. at 3473.

The Court pointed out that section 504 adds nothing to the substantive rights available under the EHA; the only element added by section 504 is "the possibility of circumventing EHA administrative procedures and going straight to court with a

§ 504 claim." *Id.* Citing with evident approval lower court authority holding that EHA administrative remedies must be exhausted before a section 504 claim for the same relief may be brought, the Court declared that "the presumption in a case involving a [section 504] claim arguably with [sic] the EHA should be that the plaintiff is required to exhaust EHA remedies, unless doing so would be futile." *Id.* at nn. 22 & 23. Dissenting Justices Brennan, Marshall, and Stevens agreed: "The natural resolution of the conflict between the EHA, on the one hand, and §§ 504 and 1983, on the other, is to require a plaintiff with a claim covered by the EHA to pursue relief through the administrative channels. established by that Act before seeking redress in the courts under § 504 or § 1983." *Id.* at ——, 104 S.Ct. at 3475.

Thus, the Supreme Court determined that the careful framework Congress established in the EHA for clarifying and enforcing the educational rights of handicapped children should not be upset by allowing plaintiffs to circumvent or enlarge on the remedies available under the EHA by resort to the more general antidiscrimination provisions of section 504. A similar analysis is appropriate here, where we are satisfied that Congress did not intend plaintiffs to "circumvent the requirements or supplement the remedies"—including exhaustion—of the comprehensive scheme it designed for the redress of handicap discrimination in employment.

Therefore, we agree with District Judge Pratt that Congress intended to require persons complaining of handicap discrimination in employment to exhaust administrative remedies before availing themselves of judicial remedies under the Rehabilitation Act. The 1978 amendments to the Act mandate exhaustion as a prerequisite to such claims, regardless of whether they are brought under section 501 or section 504. Congress has not enacted one set of principles excusing exhaustion in handicap cases and another set of principles requiring exhaustion in sex, race, national origin, and age discrimination cases. Accordingly, the judgment of the District Court is affirmed.