**Paul A. TYUS, Plaintiff,**

v.

**OHIO DEPARTMENT OF YOUTH SERVICES, James E. Rogers, William Demidovich, Richard Celeste, Larry McCartney and Brenda Shoemaker, Defendants.**

No. C-2-84-1534.

United States District Court, S.D. Ohio, E.D.

March 4, 1985.

Jeffrey M. Silverstein, Dayton, Ohio, for plaintiff.

Jeffrey J. Jurca, Deborah Piperni, Asst. Attys. Gen., Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This is an action for damages and injunctive relief brought by plaintiff Paul Tyus, a former employee of the Ohio Department of Youth Services ("ODYS"). Defendants in this case, Governor Richard Celeste, his assistants Larry McCartney and Brenda Shoemaker, ODYS, ODYS Director James Rogers, and ODYS Personnel Administrator William Demidovich, are being sued in both their individual and official capacities. Plaintiff alleges that because he suffers from epilepsy, he was terminated from his employment at ODYS in violation of § 504

of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), his Fourteenth Amendment rights of due process and equal protection as guaranteed by the United States Constitution, and his federal civil rights. The complaint further charges that defendants' discriminatory discharge of plaintiff renders them liable under state law for the tort of intentional infliction of emotional distress. Jurisdiction of this Court is invoked under 28 U.S.C. § 1331, 29 U.S.C. § 794, 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and pendant jurisdiction. Plaintiff requests an order finding that defendants have discriminated against him on the basis of his handicap, and awarding him reinstatement and back pay, compensatory and punitive damages, and attorney's fees.

Currently before the Court is a motion by defendants Celeste, McCartney and Shoemaker to dismiss the complaint for failure to state a claim upon which relief can be granted, and a motion by defendants ODYS Rogers and Demidovich to dismiss for failure to state a claim and for lack of subject matter jurisdiction. Plaintiff has filed a memorandum contra both motions to dismiss.

### I. *Immunity*

It is well established that, in the absence of consent, a suit brought in federal court in which a state or one of its departments or agencies is named as the defendant is proscribed by the Eleventh Amendment to the United States Constitution, and that this jurisdictional bar applies regardless of the nature of the relief sought. *Pennhurst State School v. Halderman*, 465 U.S. 89, ——, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). As an instrumentality of the State of Ohio, therefore, defendant ODYS is immune from suit in this Court, absent consent, and its motion to dismiss is hereby GRANTED.

The Eleventh Amendment also bars suits in federal court against state officials when the state is the real, substantial party in interest. *Id.; Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

The general rule is that relief sought nominally against an officer is in fact against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the state from acting, or compel it to act. *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). It is clear that plaintiff's requests for back pay and reinstatement are requests for relief against the state itself; only plaintiff's request for damages from the individual defendants in their individual capacities would fall outside the scope of the general rule barring suits when the state is the real party in interest.

■ There is, however, a narrow but important exception to a state's Eleventh Amendment sovereign immunity. In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that the Eleventh Amendment did not bar a suit alleging that state officials had acted contrary to the United States Constitution. The *Young* exception to sovereign immunity has been narrowly construed. It is limited to allegations that state officials violated federal rather than state law. *Pennhurst*, 104 S.Ct. at 900; *Lee v. Western Reserve*, 747 F.2d 1062, 1066 (6th Cir.1984). It is also limited to the award of prospective injunctive relief. Retroactive relief and damages are barred under the Eleventh Amendment. *Pennhurst*, 104 S.Ct. at 907–911; *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). The Supreme Court, however, has upheld prospective injunctive relief even where it had a great impact on state treasuries. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358; *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Lee*, 747 F.2d at 1066. Therefore, in the case at bar, the Court believes that the Eleventh Amendment, under the *Young* doctrine, does not bar plaintiff from bringing suit in federal court in order to obtain prospective injunctive relief, such as reinstatement, from alleged federal constitutional and statutory violations by state officials. In summary, defendants' defense of Eleventh Amendment immunity is not applicable to plaintiff's constitutional, federal statutory and state claims against defendants, in their individual capacities, for damages; nor is it applicable to plaintiff's constitutional and federal statutory claims against defendants in their official capacities for prospective injunctive relief. The remaining defendants' motion to dismiss plaintiff's claim for back pay is hereby GRANTED.

Defendants claim that they are shielded from suit in this case by the doctrine of "qualified immunity." The Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Based on the present record, the Court cannot conclude that, as a matter of law, defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

## II. *Exhaustion of Remedies*

■ Citing *Smith v. U.S. Postal Service*, 742 F.2d 257 (6th Cir.1984), defendants contend that plaintiff must exhaust his administrative remedies prior to bringing suit in federal court for allegations of employment discrimination under the Rehabilitation Act, and that plaintiff has not done so. Plaintiff rebuts that he has, in fact, exhausted his administrative remedies and requests the Court's leave to amend his complaint to so state. Plaintiff's request to amend his complaint is GRANTED. The amended complaint shall be filed within twenty (20) days of the date of this order. Defendants' motion to dismiss for plaintiff's failure to exhaust his administrative remedies is DENIED without prejudice to resurrection of

the motion after plaintiff has amended his complaint.

### III. *42 U.S.C. § 1983*

In Count II of his complaint plaintiff claims, presumably pursuant to 42 U.S.C. § 1983, that defendants have violated his rights of due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

Defendants contend that plaintiff's allegations of employment discrimination due to handicap do not state a claim for relief under 42 U.S.C. § 1983 because Congress created a private right of action for handicap discrimination cases under § 504 of the Rehabilitation Act. 29 U.S.C. § 794.

29 U.S.C. § 794 provides in pertinent part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service ...

29 U.S.C. § 794a(a)(1) and (2) establish an express private right of action for the intended beneficiaries of § 794. *Smith*, 742 F.2d 257 (6th Cir.1984).

Directing the Court's attention to *Middlesex County Sewage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 19–21, 101 S.Ct. 2615, 2625–6, 69 L.Ed.2d 435 (1981) and *Miener v. Special School Dist. of St. Louis County*, 580 F.Supp. 562, 568 (E.D.Mo.1984), defendants state that the existence of an adequate federal statutory remedy for handicap discrimination demonstrates an intent by Congress to preclude such a remedy under 42 U.S.C. § 1983.

Title 42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that the term "laws," as used in § 1983, includes federal statutes. Therefore, *Thiboutot* sanctioned the use of § 1983 to bring an action in federal court for violations of federal statutes under color of state law. The Court, however, has recognized two exceptions to the application of § 1983 to statutory violations: (1) when Congress forecloses a § 1983 remedy in the underlying act, and (2) when the statute at issue does not create "rights, privileges, or immunities" within the meaning of § 1983. *Middlesex*, 453 U.S. at 19, 101 S.Ct. at 2625; *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 27–30, 101 S.Ct. 1531, 1544–45, 67 L.Ed.2d 694 (1981). With regard to the former, the Court held in *Middlesex:*

When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983 ... [W]hen a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing the suit under § 1983.

*Middlesex*, 453 U.S. at 20, 101 S.Ct. at 2626.

Count I of plaintiff's complaint states that defendants violated § 504 of the Rehabilitation Act; Count II alleges that defendants violated plaintiff's constitutional rights of equal protection and due process; and Count III alleges a conspiracy to deprive plaintiff of his civil rights. Plaintiff's claim for relief under 42 U.S.C. § 1983,

therefore, has two potential components. First, § 1983 might be available to remedy violations of plaintiff's substantive Rehabilitation Act rights. Second, § 1983 might be available to remedy a violation of plaintiff's constitutional rights.

The decision in *Middlesex* addressed the issue of whether or not a claimed violation of a federal statutory right was cognizable under § 1983 where sufficient remedial devices were already present in the federal statute. There was no mention of alleged violations of constitutional rights accompanying the alleged statutory violations. *Brewer v. City of Bristol*, 577 F.Supp. 519, 529 (E.D.Tenn.1983).

However, in *Smith v. Robinson*, — U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court extended *Middlesex* to cover constitutional claims. The United States Court of Appeals for the First Circuit had found that the Education of the Handicapped Act ("EHA") contained a comprehensive and far-reaching remedial scheme, and concluded that, under the *Middlesex* test, intentional omissions from that scheme, such as a provision for the award of attorneys' fees, should not be supplanted by the remedial apparatus of § 1983. In the view of the Court of Appeals, the fact that the § 1983 claims alleged therein were based on independent constitutional violations rather than violations of the EHA was immaterial. The Court of Appeals added that it did not intend to indicate that the EHA in any way limited the scope of a handicapped child's constitutional rights. The Court noted that the constitutional claims alleged in the proceeding before it were factually identical to the EHA claims and that claims not covered by the EHA would still be cognizable under § 1983. *Smith v. Cumberland School Committee*, 703 F.2d 4, 8–9 (1st Cir.1983).

The United States Supreme Court granted *certiorari* and affirmed the Court of Appeals. *Smith*, 104 S.Ct. at 3457, stating

We have little difficulty concluding that Congress intended the EHA to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education.

*Id.* at 3468. The Court agreed that the EHA was sufficiently comprehensive to indicate that Congress intended handicapped children with constitutional claims to a free appropriate public education to pursue those claims through the "carefully tailored administrative and judicial mechanism set out in the statute."

We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim ... Nevertheless, § 1983 is a statutory remedy and Congress retains the authority to repeal it or to replace it with an alternative remedy. *Id.* at 3470.

 The issue, therefore, currently before this Court is whether the Rehabilitation Act provides remedial devices that are sufficiently comprehensive to demonstrate a congressional intent to preclude suits under 42 U.S.C. § 1983, on either statutory or constitutional grounds, based upon claims that could be brought under the provisions of the Rehabilitation Act. The Court believes that it does. Section 504 of the Rehabilitation Act contains a simple and broad prohibition of discrimination on the basis of handicap. *Smith*, 104 S.Ct. at 3471. It is clear that plaintiff's allegations fall directly within the intended scope of that section. As noted above, it is also clear that there is a private right of action for violations of § 504. *Smith*, 742 F.2d 257 (6th Cir.1984). Plaintiff's claims under 42 U.S.C. § 1983 are based upon the same alleged injury as is plaintiff's Rehabilitation Act claim. It does not appear that plaintiff's 42 U.S.C. § 1983 claim adds anything to plaintiff's substantive rights under 29 U.S.C. § 794 in this case, other than the possibility of circumventing Rehabilitation Act administrative procedures and going directly to court. While the exhaustion of administrative remedies is required under § 504 of the Rehabilitation Act, *Smith*, 742 F.2d 257 (6th Cir.1984), exhaustion of administrative remedies is not required under 42 U.S.C. § 1983. *Patsy v. Board of Re-*

*gents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In light of the broad remedial scope of 29 U.S.C. § 794, its clear applicability to the alleged injury in this case, and to the extent 42 U.S.C. § 1983 otherwise would allow a plaintiff to circumvent the Rehabilitation Act's exhaustion of administrative remedies requirement, the Court believes that Congress did not intend to permit 42 U.S.C. § 1983 claims based upon alleged injuries remediable under 29 U.S.C. § 794. Accordingly, defendants' motion to dismiss that portion of plaintiff's complaint requesting relief pursuant to 42 U.S.C. § 1983 is hereby GRANTED.

### IV

Count III of the complaint avers that defendants Rogers, Demidovich, McCartney and Shoemaker conspired to terminate plaintiff because of his epilepsy, in violation of his civil rights. Paragraph four of the complaint, which is incorporated by reference into Count III, states that defendant Celeste was aware of and permitted the alleged discriminatory acts against plaintiff. Apparently Count III is intended to assert a claim under 42 U.S.C. §§ 1985 and 1986.[1]

In *Griffin v. Breckenridge,* 403 U.S. 88, 101–102, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971), the Supreme Court stated that § 1985(3), which prohibits conspiracies for the purpose of depriving an individual of "equal protection of the laws," was meant to reach a conspiracy that was based on a racial, or perhaps otherwise class-based, invidiously discriminatory animus. Citing *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), defendants argue that 42 U.S.C. § 1985(3) was not intended to reach any class-based animus other than racial bias or, at the most, discrimination against a "suspect class." The

Court in *Scott,* however, expressly withheld judgment on the issue of whether 42 U.S.C. § 1985 was intended to reach any class based animus other than racial animus, and even declined to find that § 1985 does not reach conspiracies aimed at a class or organization on account of its political views or activities.[2] The Court noted that there is some legislative history to support the view that § 1985(3) has a broader reach:

> Senator Edmunds's statement on the floor of the Senate is the clearest expression of this view. He said that if a conspiracy were formed against a man "because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, ... then this section could reach it." Cong.Globe, 42d Cong., 1st Sess. 567. The provision that is now § 1985(3), however, originated in the House. The narrowing amendment, which changed § 1985(3) to its present form, was proposed, debated, and adopted there, and the Senate made only technical changes to the bill. Senator Edmunds's views, since he managed the bill on the floor of the Senate, are not without weight.

*Id.* at ——, 103 S.Ct. at 3358–60.

The courts are split on the issue of whether handicapped persons are entitled to protection under § 1985(3). Compare *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1174–77 (10th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1601, 80 L.Ed.2d 131 and *Cain v. Archdiocese of Kansas City, Kansas,* 508 F.Supp. 1021, 1026–27 (D.Kan.1981), with *People by Abrams v. 11 Cornwell Co.,* 695 F.2d 34, 42–43 (2d Cir.1982).

The Court reads 42 U.S.C. § 1985(3) more broadly than do defendants. As noted above, § 1985(3) makes no references to

---

**1.** The Court does not hold that the remedy provided by 29 U.S.C. § 794a(a)(2) reveals an intent by Congress to preempt claims of conspiracy pursuant to 42 U.S.C. § 1985. The Court believes that, in the case at bar, the latter provides a cause of action which is broader in scope than that of the former.

**2.** In *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1973), the United States Court of Appeals for the Sixth Circuit held that a claim of discrimination against supporters of a particular political candidate could be brought under § 1985(3).

race, but rather prohibits conspiracies to deprive *any* person of the equal protection of the laws. The Supreme Court in *Scott* noted that "[t]he predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters." However, the same is true of the Thirteenth and Fourteenth Amendments to the United States Constitution. As stated by the United States Supreme Court in the *Slaughter-House Cases*, 16 Wall. (83 U.S.) 36, 21 L.Ed. 394 (1873):

> [O]n the most casual examination of the language of [the Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution], no one can fail to be impressed with the one pervading purpose found in them all, lying at the foundation of each, and without which none of them would. even have been suggested; we mean the freedom of the slave race ... It is true that only the fifteenth amendment, in terms, mentions the negro by speaking of his color and his slavery. But it is just as true that [the Thirteenth and Fourteenth Amendments were] addressed to the grievances of that race, and designed to remedy them as the fifteenth.
>
> We do not say that no one else but the negro can share in this protection ... Undoubtedly while negro slaving alone was in the mind of the Congress which proposed the thirteenth article, it forbids any other kind of slavery, now or hereafter.

*Id.* at 71–72.

> The first section of the [Fourteenth Amendment], to which our attention is more specifically invited, opens with a definition of citizenship ... [I]t overturns the Dred Scott decision by making *all persons* born within the United States and subject to its jurisdiction citizens of the United States. That its main purpose was to establish the citizenship of the negro can admit of no doubt.

*Id.* at 72–73.

> 'Nor shall any State deny to any person within its jurisdiction the equal protection of the laws.'

In the light of the history of these amendments, and the pervading purpose of them, which we have already discussed, it is not difficult to give a meaning to this clause. The existence of laws in the States where the newly emancipated negroes resided, which discriminated with gross injustice and hardship against them as a class, was the evil to be remedied by this clause, and by it such laws are forbidden.

*Id.* at 81.

■ Despite the fact that the Thirteenth and Fourteenth Amendments were passed originally to secure the rights of a specific group, and that a particular group may have been the original beneficiary of the Amendments, it is now beyond doubt that they are applicable to all citizens. See *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 669, 86 S.Ct. 1079, 1082, 16 L.Ed.2d 169 (1966); *Fay v. New York*, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed.2d 2043 (1947). The Equal Protection Clause of the Fourteenth Amendment, which, like 42 U.S.C. § 1985(3), attacks the deprivation of "any person" of the equal protection of the laws, has been invoked to prohibit prejudicially disparate treatment on the basis of sex, alienage, handicap, poverty, corporate status and a wide range of other nonracial characteristics.

Recognizing § 1985(3)'s coverage of conspiracies motivated by nonracial class animus is consistent with the approach of the Supreme Court "to other Reconstruction civil rights statutes in [recent] years ... to 'accord [them] a sweep as broad as their language.'" *Griffin v. Breckenridge*, 403 U.S. at 97, 91 S.Ct. at 1795. The language of § 1985(3) gives no indication that racial discrimination is a requisite element of a cause of action thereunder. To engraft such a limitation would bring the statute into anomalous contrast with comparable Reconstruction civil rights legislation, under which a wide variety of nonracial classes have won relief from discriminatory treatment.

■ In the Court's view, handicapped individuals constitute a class especially

meriting protection under § 1985(3). As a class, they have traditionally been victimized by disabling laws, and even more so by the physical and attitudinal barriers that have pervaded our society. They share an immutable characteristic which has carried a stigma of inferiority; and they have not had the political power in the past to significantly better their situation. The severity of the discrimination which they have endured is evidenced by Congress' passage of § 504 of the Rehabilitation Act.

The Court finds that the handicapped are a class protected by § 1985(3). Defendants' motion to dismiss plaintiff's claim under that section and consequently under § 1986 is therefore DENIED.

It is so ORDERED.