NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0848n.06

No. 09-2527

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MELISSA TAYLOR,

    Plaintiff-Appellant,

       v.

PATRICK R. DONAHOE, Postmaster General of the
United States,

    Defendant-Appellee.

_____/

**FILED**

**Dec 15, 2011**

LEONARD GREEN, Clerk

On Appeal from the United
States District Court for the
Eastern District of Michigan
at Detroit

**Before:**     **GUY, COOK, and STRANCH, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**    Plaintiff Melissa Taylor appeals from the

dismissal of her claims against Patrick R. Donahoe, Postmaster General of the United States,

arising out of her employment with the United States Postal Service.[1]  Plaintiff asserted

claims under Title VII (42 U.S.C. § 2000e, *et seq.*) and/or the Rehabilitation Act (29 U.S.C.

§ 701, *et seq.*), for discrimination based on race, gender, and disability; failure to provide

reasonable accommodation; and retaliation.  The district court granted, in part, the

defendant's first motion to dismiss to the extent that plaintiff's claims were not

administratively exhausted in a timely manner by her initial EEO contact on February 13,

---

[1]Patrick Donahoe became Postmaster General during the pendency of this appeal and was
substituted for John E. Potter, the former Postmaster General of the United States.

2007. Plaintiff filed a more definite statement of her claims at the invitation of the district court, and defendant again moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). The district court granted defendant's second motion and dismissed the complaint in its entirety. Plaintiff's appeal expressly abandons all claims except for retaliation and argues (1) that she made timely contact with her EEO counselor with respect to her retaliation claims; and (2) that she alleged a sufficient factual basis for her retaliation claims to survive the defendant's motion to dismiss. After review of the record and consideration of the arguments presented on appeal, we affirm.[2]

## I.

Plaintiff, an African-American woman, was hired to work for the United States Postal Service in January 1998. She alleged in her more definite statement that she began to experience respiratory problems after she started working with the mail sorting machines in 2003. Plaintiff allegedly had fifteen emergency room visits for acute asthma attacks, and claimed that her supervisor admittedly knew about her visits to the emergency room on January 27 and March 11, 2005.

In early February 2005, believing that her asthma attacks were related to her work operating mail processing machines, plaintiff made several requests for accommodation. The notes from her doctor: (1) initially requested transfer to another department to avoid pollution, dust, temperature changes, or chemical exposure; (2) imposed the restriction that

---

[2]Although retaliation was not set forth in a separate count of the complaint, retaliation was asserted in the factual section of the complaint and was litigated in the district court.

plaintiff avoid pollution, dust, temperature changes, or chemical exposure; and (3) finally instructed that plaintiff should wear a respiratory mask during working hours. Plaintiff returned to work briefly with a mask, but had an asthma attack on her last day of work on March 11, 2005. Plaintiff's doctor advised her not to return to work without an appropriate accommodation, and she applied for workers' compensation. Plaintiff declined the modified jobs offered to her in April, May, and November 2005, allegedly because they would not accommodate her limitations.

After another request for accommodation in October 2005, defendant produced OSHA air quality test results showing that there was no significant dust in the air in the facility where plaintiff had worked. A reasonable accommodation "interactive process" meeting was held with plaintiff on November 29, 2005, and proposed accommodations were discussed. No resolution was reached, however.

In June 2006, after another request for transfer had been denied, plaintiff sent Manager Charlean Bonds a "spec sheet" for a chemical called "MOLYLUBE 108-5C-CLEAN," which apparently noted that inhalation of the product may cause irritation of mucous membranes or respiratory tract. Plaintiff had come to believe, based on her own investigation, that a chemical used to clean the sorting machines might have triggered her asthma attacks. According to plaintiff, Bonds responded that the belts were cleaned with only the nontoxic "Clean-All Purpose Cleaner." Plaintiff would later discover that Bonds had been advised that, while not used to clean the belts, MOLYLUBE was being used to lubricate the drive end components of the mail sorting machines.

In August 2006, having been on nonpay status for more than a year, plaintiff received a notice of proposed separation from employment. Plaintiff responded by again requesting an accommodation, but was notified on September 19, 2006, of her separation effective October 19, 2006. The union filed a timely grievance of the separation on her behalf, which was finally denied in May 2007.

In January 2007, while the grievance was pending, plaintiff sent another doctor's note with another request for accommodation. Less than 45 days later, on February 13, 2007, plaintiff made contact with an EEO counselor. Although plaintiff indicated at the time that she had not known that the union grievance was not the same as an EEO charge, her appeal relies on her inadvertent discovery on February 12, 2007, of evidence that Bonds had known in June 2006 that MOLYLUBE was used on the sorting machines.[3]

Plaintiff's formal EEO complaint followed, but was dismissed as untimely in April 2007. Plaintiff appealed from that dismissal and received a final agency denial in January 2008. This action was filed within 90 days of that decision. As noted, the district court dismissed the complaint in part, and then in its entirety. Plaintiff filed a timely motion for reconsideration, which was denied. This appeal followed.

## II.

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[3]Plaintiff's more definite statement alleged that plaintiff's discovery was made on April 12, 2007, but counsel represents on appeal that this was a typographical error and that the discovery was made on February 12, 2007. Plaintiff's counsel referenced both dates during oral argument in the district court.

129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. While we do not have the benefit of a written opinion in this case, our review of the district court's decision is *de novo*. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

## A.    Timeliness

A federal employee who wishes to assert employment discrimination claims must exhaust her administrative remedies. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (Title VII); *Smith v. United States Postal Serv.*, 742 F.2d 257, 260-62 (6th Cir. 1984) (Rehabilitation Act). Specifically, plaintiff was required to bring her complaints to the attention of an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). As plaintiff herself alleged, she did not contact an EEO counselor regarding these claims—including her claim of retaliation—until February 13, 2007. Although retaliation claims are often excepted from the exhaustion requirement when they arise after an EEOC charge is filed, retaliation claims based on conduct that preceded the charge must be included in that charge. *Abieta v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998).

Plaintiff contends, without much development, that her retaliation claims were timely because (1) the 45-day period did not begin to run until she discovered that Bonds knew that MOLYLUBE was used to lubricate the machines; (2) the 45-day period should be extended under theories of equitable tolling or equitable estoppel; or (3) the plaintiff's request for accommodation within the 45-day period served to exhaust claims with respect to conduct outside that period under a "continuing violation" theory or hostile work environment claim. Addressing these in turn, we find that the district court did not err in rejecting plaintiff's arguments and dismissing as untimely the retaliation claims arising prior to December 30, 2006.

*Accrual.* Plaintiff argues that under a "reasonable suspicion" (rather than "supportive facts") standard the 45-day period did not begin to run until her discovery on February 12, 2007, that Bonds had known MOLYLUBE was used to lubricate parts of the mail sorting machines. Even under that standard, however, the period would begin to accrue once the complainant reasonably should have suspected discrimination (or retaliation), but before all of the facts that would support a charge become apparent. *See Bertie v. Potter*, EEOC DOC 0120102955, 2010 WL 4153345 (EEOC Oct. 14, 2010); 29 C.F.R. § 1614.105(a)(2). Plaintiff's alleged inadvertent discovery did not reveal previously unsuspected retaliation, but was evidence that confirmed plaintiff's claim that MOLYLUBE was being used; supported her claim that a substance used on the machines may have triggered her asthma attacks; and was consistent with her position that management's several job offers would not reasonably accommodate her condition. Thus, the discovery of this evidence cannot serve

to delay accrual of the 45-day period for claims of retaliation with respect to the many requests for accommodation, the failed "interactive process" meeting, or her separation from employment more than 45-days prior to her initial EEO contact.

**Equitable tolling or estoppel.** Plaintiff argues that discrete claims of retaliation occurring outside the 45-day window should be deemed timely on the basis of the same inadvertent discovery that Bonds knew of the presence of MOLYLUBE in the workplace. In determining whether equitable tolling is appropriate, we have consistently considered the following factors: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap v. United States*, 250 F.3d 1001, 1009 (6th Cir. 2001). Plaintiff has not claimed a lack of notice, actual or constructive, of the 45-day requirement. Nor has plaintiff attempted to show that she exercised diligence in pursuing her rights or that the defendant would not be prejudiced.

Acknowledging as much, plaintiff argues that equitable tolling is nonetheless appropriate because "'despite all due diligence, [she was] unable to obtain vital information bearing on the existence of [her] claim.'" *Dixon v. Gonzales*, 481 F.3d 324, 332 (6th Cir. 2007) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003)). In *Dixon* and *Seay*, the defendant withheld information or provided misleading information that plaintiff needed to raise suspicion that the defendant's actions were motivated by discrimination or retaliation. The period was tolled, "but only until he was 'aware of the possibility that he had

suffered an adverse employment action because of illegal discrimination.'" *Dixon*, 481 F.3d at 333 (citation omitted). Similarly, equitable estoppel is invoked when a defendant takes steps to prevent the plaintiff from timely filing her claims. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004). Application of equitable estoppel is premised on misconduct by the defendant, as well as the plaintiff's actual and reasonable reliance on that misconduct. *Id*.

In this case, plaintiff rests on her allegation that Bonds denied that MOLYLUBE was used to clean the belts without disclosing that MOLYLUBE was used as a lubricant on some parts of the mail sorting machines. Accepting this allegation as true, however, plaintiff does not suggest how this denial prevented her from suspecting that the alleged failures to accommodate were motivated by discrimination or retaliation. Unlike in *Dixon* or *Seay*, the information withheld or misrepresented was not vital to the existence of plaintiff's claim that she was not offered reasonable accommodation for discriminatory or retaliatory reasons. *See Dixon*, 481 F.3d at 331-32 (applying equitable tolling where the defendant withheld the personnel record that included an unfavorable evaluation that caused plaintiff to suspect racial discrimination); *Seay*, 339 F.3d at 468-69 (applying equitable tolling where defendant misrepresented that a position had not been filled when actually a white employee had taken over the job responsibilities). Indeed, plaintiff believed from the first request for accommodation (and disability retirement) that something in the air at work had triggered her asthma attacks; maintained that she was repeatedly denied reasonable accommodation; was dissatisfied with the "interactive process" meeting; and had a grievance filed challenging her

separation from employment. Nor has plaintiff made a showing that the alleged misrepresentation in June 2006 about the presence of MOLYLUBE in any way prevented plaintiff from timely filing her claims of discrimination and retaliation.

*Continuing Violation.* Nor may plaintiff circumvent the 45-day period through reliance on the "continuing violation" theory articulated in *Haithcock v. Frank*, 958 F.2d 671, 677-78 (6th Cir. 1992). Revisiting the vitality of this theory in light of *National Railroad Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 111-14 (2002), we have held that "*Morgan* overturns prior Sixth Circuit law addressing serial violations, *i.e.*, plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003). When an employee alleges discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts occurring outside the filing period. *Id*. at 267.

In an effort to avoid the bar for acts occurring outside the filing period, plaintiff argued that she alleged retaliation for both discrete acts and for a hostile work environment. The Supreme Court in *Morgan* distinguished between discrete acts and hostile work environment claims, explaining that: "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Discrete acts that fall within the statutory

period do not make those that fall outside the period timely. *Id.* at 112. In contrast, for hostile work environment claims, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. In order to be timely, the EEO contact need only be made within 45 days of "any act that is part of the hostile work environment." *Id.* at 118.

Thus, the discrete claims of retaliation alleged to have occurred before December 30, 2006—including the failures to offer reasonable accommodation upon request or through the interactive process meeting and the separation from employment after more than a year without pay—were untimely. That leaves any discrete acts of retaliation occurring within the 45-day period and the allegation of a hostile work environment extending into the 45-day period.

## B.    Retaliation

Keeping in mind that our review is *de novo*, we turn to the dismissal of discrete claims of retaliation under Rule 12(b)(6). To state a *prima facie* case of retaliation, a plaintiff must establish (1) that she engaged in protected activity; (2) that the exercise of protected rights was known to the defendant; (3) that the defendant took adverse action (which includes actions that would dissuade a reasonable worker from making or supporting a charge of discrimination); and (4) that there was a causal connection between the protected activity and such adverse action. *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009).

Plaintiff argues on appeal that she engaged in protected activity known to the defendant through her many requests for accommodation between February 2005 and February 2007. Without separating the alleged adverse actions occurring before and after December 30, 2006, plaintiff quotes at length from the averments in her more definite statement to identify the discrete acts of retaliation (Paras. 18, 21, 34, 42, 45, 46, 50, 51, 54, 62, 65, 66, 69, 77, 80, 81, 91, 92, 105, 148, and 168). The bulk of these allegations, however, involve repeated requests for accommodation, alleged failures to assist in identifying irritants in the workplace as part of the interactive process, concealment of the fact that MOLYLUBE was used on the machines, and her termination from employment. As is alleged, plaintiff last worked in March 2005, and was separated from employment in October 2006. When limited to the acts occurring after December 30, 2006, we find that plaintiff has not alleged facts that would permit the court to infer a causal connection between the alleged protected activity and either the rejection of renewed requests for accommodation in January and February 2007 or the denial of her grievance in May 2007.

With respect to the assertion of a hostile work environment claim, we find that the district court did not err in finding that plaintiff has failed to state a plausible claim for relief. First, the alleged wrongs identified by plaintiff represent discrete acts of alleged retaliation (or discrimination) rather than acts contributing to a hostile work environment. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708 (6th Cir. 2007); *Sassé v. United States Dept. of Labor*, 409 F.3d 773, 783 (6th Cir. 2005). Second, while it is less than clear what harassment plaintiff alleged to have been subjected to apart from the refusal to provide reasonable

accommodation, plaintiff's averments are insufficient to allege a hostile work environment claim. A hostile work environment exists when "the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). Plaintiff has not alleged facts from which the court may infer that plaintiff was subjected to the kind of severe or pervasive harassment that is necessary for a hostile work environment claim at any time—much less during the 45-day period that preceded her initial contact with the EEO counselor on February 13, 2007.

   **AFFIRMED.**

**JANE B. STRANCH, Circuit Judge, dissenting.** I respectfully dissent from the majority opinion because I conclude that Taylor stated plausible claims for at least one discrete act of retaliation and for retaliatory harassment. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I believe we are constrained by precedent, including the Supreme Court's instruction in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), to reverse and remand the case for further proceedings on these two claims.

The majority disposes of the retaliatory harassment claim by concluding as a matter of law that "the alleged wrongs identified by plaintiff represent discrete acts of alleged retaliation . . . rather than acts contributing to a hostile work environment," and by further concluding that Taylor failed to allege "facts from which the court may infer that plaintiff was subjected to the kind of severe or pervasive harassment that is necessary for a hostile work environment claim at any time–much less during the 45-day period that preceded her initial contact with the EEO counselor on February 13, 2007." I do not find the admittedly "lengthy" allegations of the complaint susceptible to these summary conclusions and, in my view, such may only be reached by applying a standard at variance with the "plausibility" standard applicable to our Rule 12(b)(6) review.

To formulate a *prima facie* case of retaliation, Taylor was required to allege that (1) she engaged in protected activity; (2) her employer knew about her exercise of protected rights; (3) the employer thereafter took adverse employment action against her or a supervisor subjected her to severe or pervasive retaliatory harassment; and (4) there was a

causal connection between Taylor's protected activity and the adverse employment action or the retaliatory harassment. *See Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Severe or pervasive retaliatory harassment, like a hostile work environment claim based on race or sex, "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117; *Morris*, 201 F.3d at 791–92. "It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period [for exhausting administrative remedies]." *Morgan*, 536 U.S. at 117. If one retaliatory act "contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

Discrete actions, "such as termination, failure to promote, denial of transfer, or refusal to hire," may constitute retaliatory adverse employment actions that are actionable standing alone. *Id.* at 114. But single acts that may collectively comprise a hostile work environment need not be adverse employment actions that are by themselves actionable. Instead, a hostile work environment may be comprised of less severe, but pervasive conduct. Actionable harassment is "not limited to economic or tangible discrimination, and . . . covers more than terms and conditions in the narrow contractual sense." *Id.* at 115–16 (internal quotations and citations omitted). Indeed, the cases the majority cites recognize the same distinction. *See Clay v. UPS, Inc.*, 501 F.3d 695, 708 (6th Cir. 2007) (distinguishing the "on-going harassment" of a hostile work environment claim from a discrete act of discrimination); *Sassé v. U.S. Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005) (noting plaintiff's suspension

"was a discrete act that cannot properly be characterized as part of a continuing hostile work environment."). In deciding whether actionable harassment exists, a court must consider the totality of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Morgan*, 536 U.S. at 116.

The majority opinion does not examine the totality of the circumstances alleged to constitute a continuing course of retaliatory harassment, *see id.* at 117, but instead dissects Taylor's claim into "discrete acts of alleged retaliation[.]" *Morgan*'s teaching that such claims are comprised of a series of acts that "collectively constitute one 'unlawful employment practice,'" *id.*, reveals why such dissection is not appropriate—characterizing the series of events alleged as only discrete acts deprives Taylor of the theory of retaliatory harassment, prevents her from engaging in any discovery on her claims, and precludes her from presenting evidence that might persuade a reasonable jury to find in her favor. Significantly, such approach defies the instruction that, unlike discrete acts, acts of harassment are not defined by their severity, but rather by their "cumulative effect." *Id.* at 115. As the majority observes, Taylor need only allege sufficient facts which, when accepted as true, state a claim to relief that is plausible on its face. *See Ashcroft*, 129 S. Ct. at 1949.

Taylor met the Rule 12(b)(6) threshold. She alleged that she engaged in protected activity when she made her requests for a reasonable accommodation based on her asthmatic condition. *See Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004)

(requesting a reasonable accommodation is protected activity). She alleged that she began requesting a reasonable accommodation in February 2005 and she continued to make such requests until February 20, 2007. These requests were either refused or ignored by her supervisors. Taylor contacted the EEO counselor on February 13, 2007. In the forty-five days prior to that EEO contact, Taylor requested a reasonable accommodation on January 24, 2007, but like her other requests, it, too, was ignored. The employer waited until May 2, 2007, to inform Taylor definitively that it would do nothing more to respond to her requests for a reasonable accommodation. Because Taylor has alleged that her employer denied or ignored requests for reasonable accommodation before, during and after the 45-day administrative filing period, I have no difficulty concluding that Taylor's retaliatory harassment claim was timely under *Morgan*.

Taylor also met the *Ashcroft/Iqbal* standard in alleging the severity or pervasiveness of the  harassment directed to her by supervisors in retaliation for making the requests for a reasonable accommodation. She alleged that managers refused to cooperate with her to locate the cause of her breathing difficulties, failed to investigate diligently any environmental irritants, disingenuously offered her positions that did not accommodate her medical problem, and did not engage in a timely, good faith "interactive process" to reach a reasonable accommodation or place her in a work environment more appropriate to her medical condition, despite numerous notes from medical doctors documenting the need for such a transfer. Taylor further alleged that managers consistently maintained the only chemicals used to clean the machines in Taylor's work area were non-toxic; yet, by late June

2006, manager Charlean Bonds knew that a toxic chemical Taylor claimed exacerbated, if not caused, her asthma was, in fact, used to lubricate the machines in Taylor's work area. Bonds hid her knowledge of the use of this chemical until Taylor inadvertently learned of it in February 12, 2007, prompting her to contact the EEO counselor the next day. Taylor also alleged that, rather than cooperate with her, the Postal Service terminated the employment she had held for seven years. These and other facts alleged, taken in their totality and viewed in their cumulative effect, as we are required to do, are sufficient to state a plausible claim that Taylor was subjected to pervasive retaliatory harassment that was causally connected to her requests to accommodate her medical condition. Taylor should be permitted to litigate that claim.

Turning to discrete acts of retaliation, *Morgan* makes clear that any timely acts alleged must have occurred within the 45 days prior to February 13, 2007, when Taylor contacted the EEO counselor, absent proper application of an equitable tolling doctrine to some untimely event. *Morgan*, 536 U.S. at 114, 122. Taylor alleges Bonds's knowledge of the use of a toxic chemical in the work environment in June 2006 and her failure to disclose that information promptly to Taylor constituted retaliation for Taylor's requests for accommodation. In accordance with Taylor's equitable tolling argument, I find this sufficient to state a timely claim.

The majority states that, even accepting as true Taylor's allegation that Bonds falsely denied the use of the chemical, "plaintiff does not suggest how this denial prevented her from suspecting that the alleged failures to accommodate were motivated by discrimination or

retaliation." To the contrary, Taylor was unaware of Bonds's knowledge until February 12, 2007, when Taylor read an email confirming that Bonds knew the toxic chemical of which Taylor complained was used to lubricate the machines in Taylor's work area. It was only by reviewing this email that Taylor learned about Bonds's knowledge and therefore suspected that her supervisors' conduct was "driven by a desire to retaliate against [her]" for her accommodation requests, which ultimately led to her employment termination. *See Dixon v. Gonzales*, 481 F.3d 324, 332–33 (6th Cir. 2007). Taylor did not wait until she was certain that retaliation played a role in her managers' decisions before seeking EEO counseling, "but only until [she] was 'aware of the possibility that [she] had suffered an adverse employment action" because of illegal retaliation. *Id.* at 333. Once Taylor realized the possibility that she had been a victim of illegal conduct by her employer, she immediately contacted the EEO counselor the very next day. Therefore, under *Dixon*, she demonstrated entitlement to equitable tolling.

Because I believe governing precedent establishes that Taylor has stated a plausible claim for relief, I respectfully dissent.