KINNEY, APPELLANT, *v.* OHIO STATE DEPARTMENT OF ADMINISTRATIVE SERVICES, APPELLEE.

(No. 83AP-970—Decided February 21, 1984.)

*Mr. Jonathan J. Downes,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* and *Mr. John E. Breen,* for appellee.

NORRIS, J. Appellant, George E. Kinney, appealed to the State Personnel Board of Review from an allegedly forced resignation from his employment with the Department of Administrative Services.

The facts which were elicited at the hearing before a referee are well summarized by the referee's findings of fact:

"* * * On January 14, 1983 * * * the Appellant was requested to report * * * for a meeting with Mr. William Denihan, Deputy Director of Personnel. The Appellant had no prior notice of the subject matter of the meeting but assumed they involved his duties in the Bureau of Insurance and Risk Management.

"* * * Mr. Denihan met with him privately, at approximately 10:00 a.m., and presented him with an order of removal based upon certain acts of misconduct. The Appellant challenged the allegations set forth in the order but was particularly disturbed that he was being accused of dishonesty.

"As an alternative to removal, Mr. Denihan offered the Appellant the opportunity to resign. * * *

"After discussing the matter with the Appellant, Mr. Denihan left * * * to present a similar order of removal to another employee allegedly involved in the same incident as the Appellant. In order to ensure that this other employee would not have any prior notice of Mr. Denihan's arrival, the Appellant was ordered to refrain from discussing the matter [with] any other employees * * *. The Appellant requested the right to make a telephone call to his wife and to his attorney. He was permitted to make these telephone calls and succeeded in contacting his wife to explain the circumstances to her but was unable to contact his attorney.

"At first, the Appellant considered fighting the order of removal. However, before Mr. Denihan left the office, he explained a removal would have a detrimental affect on the Appellant's retirement benefits. The Appellant made it clear that retirement benefits were an important factor in his decision whether to resign or to fight the removal. It was not until Mr. Denihan returned * * *, sometime after noon, that he corrected himself regarding the retirement benefits and stated that they would not be adversely affected by the removal.

"The Appellant testified, additionally, that because of a previous heart attack and continuing heart problems, he had been advised to avoid stressful situations or to maintain his composure to the best of his ability. The Appellant is also beset by high blood pressure. During the time * * * he was in the presence of Mr. Ronald Reamy or Mr. Robert Dunbar, Administrative Assistants to the Director. These individuals were assigned to remain with the Appellant until Mr. Denihan returned. * * * Appellant was never informed that he was free to leave and, in fact, remained * * * for approximately three (3) hours.

"* * * After Mr. Denihan left the fortieth floor, the Appellant was left for over two (2) hours with the impression that the removal could have an adverse affect on his retirement benefits. While the initial statement of Mr. Denihan appears to have been false, the Appellant was not able to confer with his attorney on the matter. After Mr. Denihan returned to the fortieth floor and corrected his earlier statement, the Appellant signed his resignation letter."

Although the referee did not permit appellant to litigate the question of whether or not the charges against him were justified, he did conclude that, under the circumstances, appellant was precluded from making an informed decision and that therefore his resignation was not voluntary, and recommended that the resignation be disaffirmed.

The department then filed objections to the referee's report and recommendation. The State Personnel Board of Review adopted the referee's findings of fact, but rejected his recommendation and ordered that the resignation be affirmed, setting out its reasoning in an accompanying opinion:

"* * * Appellant was told to resign or be fired and, at that time, given erroneous information regarding the effect of removal upon his retirement benefits. Two (2) hours later, the misinformation was corrected and, sometime after that, the Appellant resigned. This is not a 'forced resignation.'

"The Appellant clearly had a choice — he could resign and waive his right to review before this Board or he could be fired and take his chances on a favorable outcome. Although the misinformation the Appellant initially received * * * would have rendered his resignation involuntary, that error was corrected before the Appellant resigned.

"Clearly, the Appellant was under stress. However, that stress was not the result of bad faith or overreaching. Because Mr. Denihan acted fairly, the Appellant should not be permitted to change his mind to the Appellee's detriment."

In his appeal to the court of common pleas, appellant contended that the board's order was not supported by reliable, probative, and substantial evidence and that the decision of the board was contrary to law because he was precluded from submitting evidence that the department had acted in bad faith in forcing his resignation.

The court of common pleas found that the board's decision was supported by reliable, probative, and substantial evidence and affirmed the decision.

Appellant raises two assignments of error which are interrelated and will be considered together:

"I. The court of common pleas erred in finding that the decision and order of the State Personnel Board of Review was based on reliable, probative, and substantial evidence.

"II. The court below erred in failing to apply the test established to determine involuntary coerced resignation as established by this and other courts."

When reviewing an order of the court of common pleas which determines an appeal from an administrative agency based upon the manifest weight of the evidence, our function is limited to determining whether the order of the court of common pleas was the product of an abuse of its discretion. *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159. Although we might have arrived at a contrary conclusion upon the evidence before the agency, we may not substitute our conclusion for that of either the board or the court below.

The assignments of error first raise the question of whether the conduct of the appointing authority under the circumstances of this case rendered the resignation involuntary. In this regard, appellant asks us to expand upon the rule that resignations induced by threats or promises by the appointing authority are ineffective. See *Williams* v. *State, ex rel. Gribben* (1933), 127 Ohio St. 398.

Here, the uncontroverted facts reveal a sorry pattern of heavy-handed, churlish conduct on the part of the appointing authority in inducing appellant to submit his resignation. The department's peevish protestations that its pressure tactics are to be overlooked because it corrected its misstatements concerning appellant's retirement benefits, pale when compared with the totality of the circumstances, including hours of unwarranted constraint and pressure, created by the department. It is precisely this kind of reprehensible conduct, devoid of subtlety or decency, which our civil service laws are designed to prevent; and against which the board is charged to protect public employees.

When a resignation is the product of the appointing authority's wrongful

overt acts of coercion and duress, it is involuntary and ineffective. Accordingly, the court of common pleas abused its discretion when it concluded that the board's decision was supported by reliable, probative, and substantial evidence.

The assignments of error next raise the questions of whether the court of common pleas erred as a matter of law. Concluding that appellant's proffered evidence directed at establishing his innocence of the charges against him was not admissible since a hearing on the merits of the charges would have to await a determination of whether the resignation was involuntary and therefore ineffective, the referee precluded the evidence. Although the referee's reasoning might be sound in some instances, under the circumstances of this case, evidence of innocence of the charges was relevant to the issue of voluntariness. As mentioned above, a resignation is involuntary and therefore ineffective when it is the product of the appointing authority's wrongful coercion. Thus, where an employer induces the resignation as the only alternative to a removal based upon unfounded charges of misconduct, the resignation should be regarded as ineffective to deny the employee his appeal. Under those circumstances, there has not been a resignation but, rather, a removal, the merits of which the employee should be permitted to contest. This differs from a situation where an employee is permitted to resign as an alternative to being removed on charges which are meritorious; in such an event, as there is no coercion, the resignation is voluntary.

Accordingly, the court of common pleas erred, as a matter of law, in affirming the decision of the board without appellant having had an opportunity to introduce evidence directed toward establishing that the charges against him were unfounded.

The assignments of error are sus-

tained, the judgment of the court of common pleas is reversed, and this cause is remanded to the trial court with instructions to reverse the decision of the board.

*Judgment reversed and cause remanded.*

REILLY and MOYER, JJ., concur.