**Betty Jo PENDLETON, Plaintiff,**

v.

**JEFFERSON LOCAL SCHOOL DISTRICT, BOARD OF EDUCATION, et al., Defendants.**

**No. C2–88–878.**

United States District Court, S.D. Ohio, E.D.

Dec. 20, 1990.

---

**2.** See this Court's previous Order in *Boden v. Anaconda Minerals Co., et al.*, 757 F.Supp. 848, 852–53 (S.D.Ohio 1990).

Grant Douglas Shoub, Columbus, Ohio, for plaintiff.

Larry Holliday James and Theodore Daniel Sawyer, Columbus, Ohio, for defendants.

## ORDER AND OPINION

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to Defendant Jefferson Local School District, Board of Education's ("School District"), and Defendant Memorial Middle School Principal Donald Schiff's ("Schiff") respective motions for summary judgment. These motions are brought pursuant to Federal Rule of Civil Procedure 56.

This action was filed by Plaintiff Betty Jo Pendleton ("Pendleton") on August 19, 1988. The Complaint alleges actions taken by Schiff in the spring and summer of

1987, were in violation of 29 U.S.C. Section 794, as well as 42 U.S.C. Section 1983, based upon an alleged pattern of harassment which caused Pendleton's Multiple Sclerosis to worsen thereby forcing her to take disability leave. In addition to the federal complaint for damages and declaratory and injunctive relief, Pendleton also brings pendent jurisdictional claims sounding in intentional infliction of emotional distress and negligent infliction of emotional distress against Schiff, and a breach of contract claim against both Defendants.

## FACTS

Plaintiff, Betty Jo Pendleton, was diagnosed in 1964 as having Multiple Sclerosis, a progressive auto-immune disease. The Defendant, Jefferson Local School District was aware that the plaintiff had this disease when they hired her in 1966. Plaintiff was primarily an eighth grade math teacher from 1966 until she took disability leave with the State Teachers Retirement Plan in 1987.

On or about December 21, 1986, plaintiff fell at home and broke her pelvic bone. She returned to work part-time in February 1987 and resumed full-time work the following month.

Sometime prior to April 20, 1987 defendant Donald Schiff, the principal at Memorial Middle School, discussed the plaintiff's condition with the plaintiff's personal physician Dr. Martin Marcus. It is unclear from the record who initiated the communication. Plaintiff alleges defendant Schiff did so without her knowledge, approval, authorization or consent. Schiff counters by claiming the opposite. Subsequently on April 20, 1987, defendant Schiff met with plaintiff's husband, John Pendleton. Defendant indicated that Dr. Marcus told him that plaintiff was suffering from a psychosis resulting from plaintiff's prolonged use of legally-prescribed cortizone medication. Defendant Schiff also suggested accommodating any health problems by having the plaintiff teach part-time or teach a subject less strenuous than math.

Dr. Marcus has not been deposed, nor have affidavits been received from him.

However, in the affidavit of Dr. James M. Parker, another physician of the plaintiff, Dr. Parker stated that he had examined the plaintiff on or about May 11, 1987 and observed no sign of psychosis. He thereafter sent a letter to defendant Schiff detailing his report. On or about May 15, 1987, defendant Schiff retracted his decision and decided to permit plaintiff to teach math full-time for the 1987–88 academic school year.

The uncontroverted facts are that on or about May 17, 1987, the plaintiff fell and broke her leg, necessitating surgery. Because of this injury the plaintiff missed the remainder of the school year.

When Mr. Schiff visited the plaintiff in the hospital the plaintiff suggested she interpreted certain comments that were made by the defendant to be unpleasant to her. One comment by the defendant was that, "you've [the plaintiff] really messed up now." Another comment was in response to plaintiff's offer to help students who had failed their math competency tests. Defendant replied, "[It's] on your conscience now, if they failed, they failed." Since these comments were not stated with an angry tone it is uncertain whether these comments were intended to be humorous, sarcastic or harassing.

The plaintiff was released from the hospital on or about May 29, 1987. Apparently toward the end of July, 1987, defendant Schiff repeatedly telephoned the plaintiff inquiring as to whether or not she would be returning to work for the upcoming school year. Plaintiff informed the defendant that she was awaiting her doctor's release. Dr. Parker felt that this allegedly persistent pattern of harassment and discriminatory treatment of the plaintiff directly caused an increase in the severity of the plaintiff's Multiple Sclerosis, compelling the plaintiff to request disability leave for the 1987–88 school year on August 25, 1987, and her subsequent filing of this action with the Court. It is with this in mind that the Court now looks at the defendant's motions for summary judgment.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and one which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *Citing, Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1) *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard review, the Court now turns to the merits.

## ANALYSIS

### I PLAINTIFF'S CLAIM FOR HANDICAP DISCRIMINATION UNDER 29 U.S.C. SECTION 794

There are three requirements which must be satisfied in order to determine whether the plaintiff is afforded relief under 29 U.S.C. Section 794: (1) does 29 U.S.C. Section 794 create a private cause of action; (2) whether pursuant to 29 U.S.C. Section 794a(a)(2), the plaintiff is first required to exhaust her administrative remedies; and (3) whether there are genuine factual issues regarding the substance of the plaintiff's claim of handicap discrimination which precludes summary judgment. The Court will discuss each of these requirements *seriatim.*

### A SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. SECTION 794, AND PRIVATE CAUSES OF ACTION

■ In *Consolidated Rail Corporation v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79

L.Ed.2d 568 (1984), the Supreme Court clarified the scope of a private right of action to enforce Section 504 of the Rehabilitation Act of 1973, 87 Stat. 394 as amended, 29 U.S.C. Section 794 (1982 ed.). Section 504 provides:

No otherwise qualified handicapped individual in the United States, as defined in Section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

In 1978, Congress amended the Rehabilitation Act to specify the means of enforcing its ban on discrimination. Section 505(a)(2), as added and set forth in 29 U.S.C. Section 794a(a)(2) (1982 ed.) provides:

The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under Section 794 of this title.

The Supreme Court concluded that Sec. 505(a)(2) provides the remedies set forth in Title VI. Therefore, at the very least, one may recover back pay due under Sec. 504 and that said suits for employment discrimination may be maintained even if an employer receives no federal aid the primary purpose of which is to promote employment. *See Guardians Assn. v. Civil Service Comm. of New York City*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983).

There are only two cases cited by the parties subsequent to *Consolidated*. First, the plaintiff relies on *Jennings v. Alexander*, 715 F.2d 1036 (6th Cir.1983), which held that Section 504 does provide a private cause of action for handicapped individuals. When the Supreme Court reversed the case, they rejected the contention that Section 504 reached the disparate-impact discrimination caused by the respondent's reduction of Medicaid coverage. However, the Supreme Court omitted discussing whether or not a private cause of action was allowed. As such, the holding in *Jennings*, that a private cause of action exists, is still binding upon the Sixth Circuit.

The defendant relies upon *Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20 (1st Cir.1988), to suggest that in 1988 the First Circuit did not acknowledge a private right of action under the Rehabilitation Act. However, the *Barron* Court stated that there was no private right of action under Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. Section 793(b). This case concerns Section 504 and as such Section 504 of the Rehabilitation Act of 1973, as amended, does provide a private cause of action.

**B  PLAINTIFF'S REQUIREMENT TO EXHAUST ADMINISTRATIVE REMEDIES PURSUANT TO 29 U.S.C. SECTION 794a(a)(2)**

■ Section 794a(a)(2) of Title 29 provides that "the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. Sec. 2000d et seq.] shall be available" to any person aggrieved by a violation of Section 794. In *Cannon v. University of Chicago* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court was not persuaded that administrative remedies must be exhausted prior to bringing suit where a statute does not assure that the aggrieved party is able to actively participate in the administrative process. The defendant, however, states that this is not the law in the Sixth Circuit and that in accordance with *Smith v. United States Postal Service*, 742 F.2d 257 (6th Cir.1984), a plaintiff must first exhaust administrative remedies.

This court does not view the rule in the Sixth Circuit to be as the defendant suggests. In *Smith* the claim was against an agency of the federal government, not a recipient of federal assistance, like the defendant school district. The defendant urges that such a distinction is not warranted from the opinion in *Smith*. However, such a distinction was recognized wherein the Sixth Circuit stated:

[t]hat there are significant differences between this employment discrimination action brought by a Postal Service employee against his federal employer under a statute which provides him with extensive administrative procedures to remedy the alleged wrong, and the situation in *Cannon*, which involved a sex discrimination action brought by a rejected applicant to a private medical school under a statute which provided no such recourse. *Id.* at 260.

The Postal employee in *Smith* was afforded the remedies, procedures and rights set forth in Title VII; 42 U.S.C. Sections 2000e–16(c) (1982 ed.). Here, the plaintiff is afforded the remedies, procedures and rights set forth in Title VI; 42 U.S.C. Sections 2000d–6 (1982 ed.). Furthermore, the Sixth Circuit in *Neighborhood Action Coalition v. Canton, Ohio*, 882 F.2d 1012 (6th Cir.1989), has explicitly held "that Title VI litigants need not exhaust their administrative remedies before pursuing their private cause of action in federal court." *Id.* at 1015. *See Also Sanders by Sanders v. Marquette Public Schools* 561 F.Supp. 1361, 1369 (W.D.Mich.1983). It is interesting to note that in *Neighborhood Action Coalition*, the litigants did not attempt to invoke their remedies prior to filing their action.

Even if the rule in the Sixth Circuit was not so plain, the plaintiff would still have been able to continue her action since there is no administrative relief still available for her to pursue. The defendant admits that the plaintiff cannot apply to the Civil Service Commission for administrative relief. Defendant suggests that the plaintiff could pursue administrative remedies, recognized by the federal Equal Employment Opportunities Commission, through the Ohio Civil Rights Commission. However, Ohio Administrative Code Section 4112–3–01(D) provides that:

A charge of unlawful discriminatory practices must be filed within six months after the unlawful discriminatory practices alleged in the charge were committed.

Since more than six months have passed, a dismissal of this case at this time would deprive the plaintiff of any remedy. Therefore, plaintiff is not required to exhaust non-existent administrative remedies.

C GENUINE FACTUAL ISSUES REGARDING THE SUBSTANCE OF THE PLAINTIFF'S CLAIM OF HANDICAP DISCRIMINATION AND SUMMARY JUDGMENT

■ The requisite proof under the Rehabilitation Act was enunciated in *Reynolds v. Brock*, 815 F.2d 571 (9th Cir.1987) as:

To establish a prima facie case of wrongful termination under the Rehabilitation Act, [the plaintiff] must demonstrate both (1) that she is an 'otherwise qualified handicapped individual' for purposes of the Act and (2) that she was terminated because of her handicap. If she can establish a prima facie case of wrongful termination, then the burden of producing evidence shifts to the defendant, who must demonstrate a legitimate nondiscriminatory reason for terminating her. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Although the *Reynolds* case concerned an employee of a federal agency, other cases have applied the same analysis to employees of any program receiving Federal financial assistance. *See: Recanzone v. Washoe County School Dist.*, 696 F.Supp. 1372 (D.Nev.1988).

■ To consider these elements: 1) It is uncontested within this matter that the plaintiff falls within the definition of a handicapped person. There is no dispute that she is "otherwise qualified" to serve as a teacher despite her handicap. And for several years, the plaintiff had been working as a full time mathematics teacher. It is also uncontested herein that her Multiple Sclerosis qualifies for a handicap. This demonstrates to this Court that the plaintiff was an 'otherwise qualified handicapped individual' for purposes of the Act.

2) The next aspect of proof required to establish a prima facie case of wrongful termination is that the plaintiff was terminated because of her handicap. Within this case, however, there is not a genuine issue for trial as to whether the plaintiff was actually terminated, let alone terminated because of her handicap.

In *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), the Supreme Court held that the determination of employment is decided by reference to state law. The rule in Ohio as to what constitutes constructive termination of employment has been stated in *Kinney v. Department of Adm. Services*, 14 Ohio App.3d 33, 469 N.E.2d 1007 (1984), to exist when, "an employer induces the resignation as the only alternative to a removal based upon unfounded charges of misconduct." *Id.* at 36, 469 N.E.2d 1007. The plaintiff took disability leave with the intent of returning to teaching in the future. (Pendleton depo. at p. 79). The plaintiff further admitted that it was her understanding that had she returned to school in the Fall of 1987, she would be teaching math full time. (Pendleton depo. at p. 78).

According to the rule set forth in *Kinney*, since the plaintiff would not have been removed had she not applied for disability leave, it can not be said that she was terminated. Therefore, the plaintiff has not satisfied her burden of establishing a prima facie case of wrongful termination under the Rehabilitation Act. As such, the defendant's motion for summary judgment under the Rehabilitation Act must be GRANTED.

II PLAINTIFF'S CLAIM UNDER 42 U.S.C. SECTION 1983 FOR THE VIOLATION OF HER RIGHT TO THE EQUAL PROTECTION OF THE LAWS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Section 1983 allows the recovery of damages from local government bodies, including school districts, for unlawful acts that are taken pursuant to official policy. Section 1983 also permits the recovery of damages from an officer of such an entity for acts of his which are grossly negligent, but not pursuant to official policy. *Monnell v. Department of Social Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); *see also Lawler v. Marshall*, 898 F.2d 1196 (6th Cir.1990). Several lower court cases approve the presumption that Section 1983 affords a cause of action for official violations of Section 794. *Pushkin v. Regents of the Univ. of Colorado*, 658 F.2d 1372 (10th Cir.1981); *Christopher N. v. McDaniel*, 569 F.Supp. 291 (N.D.Ga.1983); *Meyerson v. Arizona*, 526 F.Supp. 129 (D.Ariz.1981), *aff'd on other grounds*, 709 F.2d 1235 (9th Cir.1983), vacated, 465 U.S. 1095, 104 S.Ct. 1584, 80 L.Ed.2d 118 (1984); *Medley v. Ginsberg*, 492 F.Supp. 1294 (S.D.W.Va.1980). However, a District Court within the Southern District of Ohio has found that it was Congress' intent to preclude the remedy of suits under Section 1983 based upon injuries remediable under Section 794. *Tyus v. Ohio Dept. of Youth Services*, 606 F.Supp. 239 (S.D.Ohio E.D.1985). Judge Duncan's Decision, however, has not been followed or reported to this Court's knowledge within the Sixth Circuit. *Tyus* was premised upon the idea that the claims asserted under § 504 of the Rehabilitation Act were identical to those of plaintiff's § 1983 claim. It was stated:

\* \* \* \* \* \*

It does not appear that plaintiff's 42 U.S.C. § 1983 claim adds anything to plaintiff's substantive rights under 29 U.S.C. § 794 in this case, other than the possibility of circumventing Rehabilitation Act administrative procedures and going directly to court. While the exhaustion of administrative remedies is required under § 504 of the Rehabilitation Act, *Smith* 742 F.2d 257 (6th Cir. 1983), exhaustion of administrative remedies is not required under 42 U.S.C. § 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In light of the broad remedial scope of 29 U.S.C. § 794, its clear applicability to the alleged injury in this case, and to the extent 42 U.S.C. § 1983 other-

wise would allow a plaintiff to circumvent the Rehabilitation Act's exhaustion of administrative remedies requirements, the Court believes that Congress did not intend to permit 42 U.S.C. § 1983 claims based upon alleged injuries remediable under 29 U.S.C. § 794. Accordingly, defendants' motion to dismiss that portion of plaintiff's complaint requesting relief pursuant to 42 U.S.C. § 1983 is hereby GRANTED. *Id.* at 244–45.

Yet, as discussed above, we have distinguished *Smith v. United States Postal Service* 742 F.2d 257 (6th Cir.1989), and do not hold that litigants now need to exhaust administrative remedies in order to pursue their Title VI relief afforded them in *Consolidated Rail.* Therefore, *Tyus* is not pervasive and this Court must look to other areas to find if a § 1983 claim can still be claimed.

In order to overcome the presumption that Section 1983 can be used to enforce Section 794, the defendant must demonstrate "by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright v. Roanoke Redev. & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1986). The court is not to conclude lightly "that Congress intended to preclude reliance on Section 1983 as a remedy for the deprivation of a federally secured right." *Id.* When not explicitly stated in the statute in question, such congressional intent has been

found when it is shown (1) that it would be inconsistent with the statutory scheme to allow the plaintiff to circumvent administrative remedies, *Smith v. Robinson,* 468 U.S. 992, 1012–13, 104 S.Ct. 3457, 3468–69, 82 L.Ed.2d 746 (1983),[1] or (2) that the statutory remedial scheme is so comprehensive that it left no room for an additional cause of action under Section 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).[2]

Since Section 794 does not explicitly state that its remedies supplant the remedies available under Section 1983, it is necessary to determine whether one of the two exceptions apply. As stated above, a plaintiff who is afforded the remedies set forth in Title VI need not exhaust their administrative remedies before pursuing a private cause of action in federal court. *Neighborhood Action Coalition,* 882 F.2d at 1015. Hence, it is not inconsistent with the statutory scheme of Section 794 to allow suit under Section 1983 even if it circumvents the administrative remedies under Section 794. The second exception requires that the statutory remedial scheme be so comprehensive as to leave no room for an additional cause of action under Section 1983. The purpose of Title VI is to make sure federal funds are not used to support discrimination. The principal remedy would be the cutting off of federal funds; but, "Congress itself has noted the severity of the fund-cutoff remedy and described it as

**1.** *Smith* held that the procedural scheme defined in the Education of the Handicapped Act ("EHA") was the exclusive remedy for educational claims. Therefore, where the EHA was available to a claim of a handicapped child based either upon the EHA or Equal Protection Clause of the 14th Amendment, the EHA was the exclusive avenue to pursue the claim. *Id.* 468 U.S. at 1013, 104 S.Ct. at 3469.

**2.** *See also Sanders by Sanders* at 1373 wherein it was stated:

... [i]t appears that the Rehabilitation Act (unlike the EAH) was not intended to be the "exclusive means" of vindicating the rights provided by the Act. There is a private cause of action under the Act. The Act, unlike the EAH, does not provide a detailed administrative scheme by which the plaintiff's individual rights may be asserted; the statute does appear also to protect "new" rights of the handicapped, but the Act does, through judicial interpretation, provide a damage remedy. In sum, where the factors do not conclusively show that the federal statute in question was intended to provide the exclusive means of asserting and protecting the rights secured by the statute, it is proper to apply the more general rule of *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and allow an action under section 1983, rather than search for a basis to preclude such an action under the dicta of *Pennhurst State School & Hospital v. Halderman, supra* [451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)] and the dissent in *Thiboutot.* For these reasons, suit may be brought to vindicate the rights established by the Rehabilitation Act under 42 U.S.C. § 1983.

a last resort, all else—including 'lawsuits' —failing." *Cannon*, 441 U.S. at 705, n. 38, 99 S.Ct. at 1962, n. 38. Clearly, the remedies available under Title VI are far less comprehensive than those available under Title VII which, arguably, does allow a separate action under Section 1983 independent of Title VII. In *Johnson v. Railway Express Agency*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1974), the Supreme Court stated that:

[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48 [94 S.Ct. 1011, 1019, 39 L.Ed.2d 147] (1974).

As such, the second exception to an explicit statutory exclusion is not present here. Therefore, the plaintiff can use Section 1983 to remedy injuries brought under Section 794.

In order to determine whether there is a violation of the plaintiff's right to Equal Protection of the Laws, the first question to be asked is whether, pursuant to the Equal Protection Clause, the handicapped constitutes a protected ('suspect') class. If handicapped persons do not constitute a suspect class, the actions of state officials are constitutionally valid if there is a rational basis for the challenged action. *See Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

The Supreme Court in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), rejected the contention that mentally handicapped persons were entitled to 'heightened' scrutiny because they constituted a quasi-suspect class. *Id.* at 445–46, 105 S.Ct. at 3257–58. The Eleventh Circuit interpreted *Cleburne* to mean that handicapped persons, of all types, do not constitute a suspect class. *Lussier v. Dugger*, 904 F.2d 661 (11th Cir.1990). As such, in order to withstand equal protection review, actions must be "rationally related to a legitimate governmental purpose." *Id.* at 671. The defendant's concern for the health of the plaintiff, and the administrative responsibility of finding a replacement if necessary, are legitimate purposes which are rationally related to the repeated calls that defendant Schiff made. In running a school which requires consistency in education, teaching styles, subject matter and the like, it is not unreasonable to inquire about plaintiff's status regarding her health.

Since there is a rational basis for the defendant's actions, there is no violation of the plaintiffs right to Equal Protection of the Laws. Plaintiff has not shown to this Court any evidence to indicate an Equal Protection argument which could overcome her *Anderson* and *Celotex* burden. Therefore, based upon this court's conclusion that there exists no genuine issue as to whether the defendants are entitled to judgment as a matter of law, the defendants motion for summary judgment of the Section 1983 claim is hereby GRANTED.

### THE PENDENT STATE CLAIMS

Without the federal jurisdiction incumbent in the 42 U.S.C. Section 1983 claim, or the 29 U.S.C. Section 794 claim, there is no longer pendent jurisdiction for the plaintiff's claims of intentional and negligent infliction of emotional distress, or for the claim of breach of contract. While the United States Supreme Court held in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1986), that the federal courts do have the power to exercise pendent jurisdiction over state law claims when the state and federal claims derive from a common nucleus of operative fact, the Court clearly recognized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 725–

26, 86 S.Ct. at 1139. With that in mind, this Court does not elect to retain the case in this Court as the State Court is now the proper forum.

WHEREFORE, UPON BEING DULY ADVISED, both defendant's motions for Summary Judgment are GRANTED and this case is DISMISSED without prejudice.

IT IS SO ORDERED.