956 F.2d 270
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert STECKY, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & COMPANY, Defendant-Appellee.
 No. 91-3522.
 United States Court of Appeals, Sixth Circuit.
 Feb. 19, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Robert Stecky appeals the decision of the District Court dismissing on summary judgment his action for constructive discharge from employment. Plaintiff alleged that the changes made to his compensation by his employer, Sears, Roebuck & Co. ("Sears), resulted in his constructive discharge. Because we do not find that the action of Sears amounted to constructive discharge, we AFFIRM the decision of the District Court
 
 
 2
 Sears hired plaintiff in 1964 as a salesman. At the time he was hired, plaintiff signed an employment application which stated,
 
 
 3
 In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice-president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.
 
 
 4
 Plaintiff was promoted to the position of Manager of Contract Sales for Cleveland in 1980. In the fall of 1985, Sears decided to consolidate the Pittsburgh and Cleveland Sales offices and to eliminate the office where plaintiff was the manager. Plaintiff was offered three options: termination of employment with generous severance pay, a sales manager position in the Pittsburgh office, or a position of a commissioned sales person in Cleveland. Plaintiff claims that the last option included a promise of "wage protection" which ensured him that he would not make any less than he had as a sales manager. Plaintiff elected to remain in Cleveland and become a commissioned sales person in carpeting. Plaintiff and Sears dispute whether the wage protection promised was to be permanent. In 1985, before his management position was eliminated, plaintiff earned about $41,000.
 
 
 5
 During 1986 and 1987, plaintiff performed the duties of a commissioned sales person. During this time, his compensation was based on a percentage of sales. Plaintiff earned $42,000 in 1986 and $63,000 in 1987. Sears reassigned plaintiff to the Philadelphia Retail Interior Office (RIO) in late 1987. Shortly after the reassignment, plaintiff was informed by Sears that in the future his compensation would be determined as a percentage of profits rather than sales. Sears would not continue any wage protection. These changes would have resulted in plaintiff being compensated in a manner similar to other sales persons in RIOs. Sears calculated that plaintiff could earn between $39,000 and $44,000 per year. Plaintiff believed that he would make under $30,000 per year.
 
 
 6
 Three weeks after being informed of the change in the method of computing compensation, plaintiff sent Sears a letter of resignation. The letter states that under the new compensation plan it would be impossible for him to earn the income he had achieved in the previous years. Plaintiff now argues that the elimination of his wage protection constituted an actionable constructive discharge under Ohio law.
 
 
 7
 The parties in this case debate whether the promised wage protection results in an at-will employment contract, as plaintiff agreed to in his original employment application, or a just-cause employment contract. Sears asserts that under Ohio law, "constructive discharge" is not a basis for an employee's claim for breach of an at-will employment contract. Because we find that plaintiff voluntarily terminated his position, we do not need to address the type of employment contract that existed between plaintiff and Sears.
 
 
 8
 Plaintiff argues that he was constructively discharged from Sears and that his resignation was therefore not truly voluntary. Ohio courts have recognized the concept of constructive discharge in cases of civil rights violations and unfair labor violation. See Jacobs v. Martin Sweets Co., Inc., 550 F.2d 364, 370 (6th Cir.), cert. denied, 431 U.S. 917 (1977); NLRB v. Tennessee Packers, Inc., 339 F.2d 203 (6th Cir.1964). We are unaware of any Ohio case law predicating constructive discharge on a breach of contract claim.
 
 
 9
 In order to prevail on a constructive discharge claim, a plaintiff must show that his decision to resign was not voluntary but rather was the result of working conditions so intolerable, difficult or unpleasant that a reasonable person would feel compelled to resign. Yates v. Avco Corp., 819 F.2d 630 (6th Cir.1987). Plaintiff has presented no evidence of such a situation. Sears believed that plaintiff's compensation would still be comparable to the compensation that he had received in the previous two years. In addition, the estimates provided by Sears indicated that plaintiff had the possibility of making the same salary as he had as a manager, even with the removal of the wage-protection agreement. The proposed compensation plan brought him in line with other Sears' employees working at similar jobs in similar locations. Even if we assume plaintiff had permanent wage protection, mere removal of the wage-protection policy as it applied to plaintiff does not create such intolerable working conditions as to amount to constructive discharge.
 
 
 10
 A resignation which results from coercive acts or duress is also not considered voluntary. Kinney v. Department of Admin. Servs., 14 Ohio App.3d 33, 36, 469 N.E.2d 1007, 1009 (Ohio App.1984). The actions of Sears do not appear to have been taken in an effort to force or coerce plaintiff into resigning. Plaintiff does not allege coercion or duress.
 
 
 11
 We find Helle v. Landmark, Inc., 472 N.E.2d 765 (Ohio App.1984), cited by appellant, to be inapposite in the circumstances of this case. Helle dealt with severance pay which was found to be expressly promised to at-will employees in consideration of their agreeing to continue on in their employment until the local operation of the employer company had closed. The court held there was nothing inconsistent between this specific agreement, enforceable as a part of the consideration for the additional labor already rendered, and employees at-will relationship.
 
 
 12
 Here, termination benefits were offered by the employer and have either already been received or are not in issue. Likewise, advance notice of the proposed change in the terms of the contract was given to Mr. Stecky. It was, in fact, the very basis for his dissatisfaction and his decision to terminate his employment. We need not then speculate as to what might have been the result under Ohio law if Stecky had stayed on instead of quitting and subsequently sought additional pay to that which was offered, on the basis of performance rendered or inadequacy of notice given.
 
 
 13
 Because we find that plaintiff voluntarily resigned from his position with Sears, we AFFIRM the District Court's dismissal of this case on summary judgment and do not further address the issues in this case.