967 F.2d 585
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Virginia CLARK, Plaintiff-Appellee,
v.
Molly Joel COYE, M.D., M.P.H., Director, State Department of
Health Services Defendant-Appellant
 No. 92-15131.
 United States Court of Appeals, Ninth Circuit.
 Argued May 12, 1992.
Submitted June 5, 1992.
Decided June 23, 1992.
 
 Before REINHARDT and KOZINSKI, Circuit Judges, and EZRA, District Judge*
 MEMORANDUM**
 The Medicaid program is designed to provide necessary medical services to individuals who otherwise could not afford them. California is not required to participate in the program, but because it has chosen to do so through the California Medicaid Assistance Program ["Medi-Cal"], Medi-Cal must be operated in compliance with federal law.
 Appellees filed a lawsuit in December of 1987 that asserted, inter alia, that inadequate reimbursement rates paid to dentists who participated in the dental component of Medi-Cal ["Denti-Cal"] severely hindered the ability of Medi-Cal recipients to obtain necessary dental care and violated federal law. On October 28, 1988, the district court certified plaintiffs as the representatives of a subclass consisting of:
 All persons who are eligible or will be found eligible for the California Medical Assistance Program ("Medi-Cal"), who seek or will seek dental care on a fee-for-service basis under the program, and who:
 (1) do not or will not have available to them such services to the extent that those services are available to the general population by virtue of the Department of Health Services ("DHS") provider rates and claims processing procedures; and/or (2) are or will be unable to obtain in their respective counties the full range of dental care covered by the Medi-Cal program.
 Appellees' motion for partial summary judgment was heard on August 27, 1990. On October 3, 1990, the district court granted the motion in part and denied it in part. The district court found that Denti-Cal dentists were being reimbursed at rates 50% below their actual cost of providing services, that only half of the dentists in California had treated any Denti-Cal patients, that only 12.5% of dentists would accept any such new patients, and that Denti-Cal patients faced great difficulty in obtaining dental treatment under the program. See Clark v. Kizer, 754 F.Supp. 572, 576-78 (E.D.Cal.1990). The court also found that the manner in which the Medi-Cal program was operated violated the equal access, statewide availability, timely care, and comparable services provisions of the Medicaid Act, 42 U.S.C. § 1396a et. seq. See id. at 573-78.
 On November 13, 1990, the district court filed an Order Granting Summary Judgment and a Permanent Injunction that resolved the liability issue and required the appellants to file "a plan for complying with 42 U.S.C. § 1396a(a)(30)(A), that significantly increases payment rates to dentists so that dental care and services will be available to Medi-Cal recipients at least to the extent these services are available to the general population with insurance in the same geographic areas." The Order required appellants to develop a plan to remedy its violations of Medi-Cal recipients' rights under 42 U.S.C. § 1396a to equal access to dental care, statewide availability of care, timely receipt of care, and comparability of services in the Medi-Cal program.
 The parties thereafter elected to proceed before a magistrate judge on the issue of remedies. In late 1990 and early 1991, appellants submitted a plan which they contended met the requirements of the district court's order. Appellees claimed that the plan would not bring the Denti-Cal program into compliance either with the order or with federal law, and, in response, proposed an alternate plan of their own. The key difference in the two plans was the differing reimbursement levels paid to Denti-Cal dentists: appellants' plan provided for payments of only 55% of the average amount billed by Denti-Cal providers, while appellees' plan provided for 80% of that average amount. In September of 1991, appellants--although they were not required to do so--voluntarily implemented the principal components of their proposal including the 55% reimbursement level.
 After extensive hearings in late 1991, the magistrate concluded that under appellants' plan "most dentists will lose money by treating Medi-Cal recipients" and that the plan "d[id] not meet the requirement of 42 U.S.C. § 1396a(30)(A) that care and services [be] available to the extent that such care and services are available to the general population with insurance in the same geographic areas." The magistrate further found that the appellees' 80% reimbursement figure "allows a reasonable compensation to a dentist providing service" under the Denti-Cal program and "is reasonably calculated to make dental services available in each geographic area to the extent that they are available to the general public with insurance." The magistrate then accepted the appellants' plan, but with a single--though critical--modification: he adopted the appellees' suggestion of an 80% reimbursement level instead of the 55% level proposed by the state. In a final judgment entered on January 13, 1992, the magistrate ordered the modified plan--including the 80% reimbursement rate--to be put into effect on or before February 1, 1992. The magistrate also ordered appellants to prepare various reports on the implementation and results of the newly-ordered plan: the reports were to begin on March 15, 1992 and end on September 15, 1992.[1]
 On January 17, 1992--four days after the entry of final judgment--appellants sought a stay of the final judgment pending appeal. The district court denied the request for a stay, but granted a temporary stay pending an emergency motion to this Court for a stay pending appeal. On February 5, 1992, appellants requested that this Court stay the imposition of the reimbursement levels required by the magistrate. We granted that motion on February 13, 1992, and set forth an expedited briefing schedule for resolution of the appeal. The result was to leave in effect the 55% reimbursement level proposed in appellants' plan and voluntarily implemented in September of 1991, as well as the remainder of appellants' principal proposals, also implemented at that time.
 Appellants appealed both the district court's grant of partial summary judgment on the liability issue and the remedy ordered by the magistrate. At oral argument, however, appellants conceded, for all practical purposes, that the plan in effect at the time of the district court's ruling on liability was inadequate--that it clearly failed to achieve the objective of ensuring equal access to dental care. Appellants also acknowledged that in their opposition to the motion for summary judgment on the liability issue they did not (contrary to their position on appeal) object to appellees' definition of the term "general population" as meaning the general insured population. Accordingly, we affirm the district court's grant of summary judgment on the issue of liability, including its definition of the term "general population".
 The disputed issue before us relates to the remedy ordered by the magistrate: the imposition of the 80% reimbursement level suggested by the appellees rather than the 55% level suggested by appellants. Appellants assert, inter alia, that the magistrate should have allowed them to put their complete plan into effect rather than rejecting their rate figures and substituting the reimbursement level that the court concluded would produce the results required by statute. Appellants question the authority of a district court to devise its own plan when it concludes that a substitute plan proposed by a state will not meet the requirements of federal law. Doing so, they argue, intrudes on the proper function of the state. Appellees, on the other hand, argue that the court--having found the state in violation of law--gave it more than a fair opportunity to develop an appropriate remedy: it allowed the state to develop a full new plan, conducted a nine-day hearing on the efficacy of that plan, rejected the rate feature of the plan only after it found that it would not achieve compliance with federal law, and approved the remainder of the plan. Under these circumstances, appellees argue that the district court acted well within its authority and discretion.
 We will not decide here whether appellants or appellees are correct. When the magistrate ordered the imposition of the 80% reimbursement level, he did so with the intention that after the parties had had some practical experience with the new plan, he would examine its actual effects. The new rate was to go into effect on February 1, 1992, periodic reports were to be made on the effect of that reimbursement level, and a comprehensive review was scheduled for September 15, 1992, at which time the magistrate retained the authority to alter the reimbursement level. The magistrate's basic concept is still a practical one, but the circumstances are different in one important respect. A motions panel of this court stayed the imposition of the 80% reimbursement level pending appeal. As a result, it is the 55% reimbursement level voluntarily implemented by the state, rather than the 80% level contemplated by the magistrate, that has been in effect for a considerable period of time--approximately nine months thus far. Although September 15, 1992 might have been a good time to review the practical results of utilizing the 80% level had the magistrate's rates been implemented as originally ordered, we are now confronted with a different set of facts. Under the existing circumstances, it appears to be appropriate to review the effects of the 55% reimbursement rate on the date on which the magistrate's review was originally scheduled--at which time appellants' rates will have been in effect for approximately a year. The experience with the state's substitute plan should provide a fair test of whether or not the remedy instituted by appellants will achieve compliance with federal law.
 In view of the change in circumstances from those originally contemplated by the magistrate, we remand this case to the district court so that the magistrate may determine whether or not appellants' plan has worked in the manner anticipated by the state, and whether that plan will timely result in the Denti-Cal program being operated in compliance with federal law. The district court shall make that determination on or about September 15, 1992--the date initially set by the magistrate for a review of the effect of the plan changes. The difference will be that the magistrate will review the effect of making payments at a 55% level rather than at an 80% level. As previously ordered, the parties shall exchange reports and information according to a reasonable schedule so that the magistrate's determination may be as timely and informed as possible. To the extent that the magistrate determines necessary or desirable, the parties may present experts and evidence in any hearing he orders on remand; however, at his discretion, the magistrate may rely solely on the reports and records produced at the 1991 hearings, along with the supplemental written reports and information filed by the parties.
 If the magistrate determines that appellants' plan will result in compliance with federal law, he shall terminate the injunction. If the magistrate finds that the plan will not have such effect, then he is free to reinstate the injunction and require reimbursement at an 80% rate or at whatever other rate, based upon the record before him, shall appear necessary to achieve compliance. If the injunction is reinstated, the magistrate may order that it take effect immediately or upon a given date. Any such injunction shall remain in effect pending a determination on the merits of any appeal; this panel will retain jurisdiction over such appeal as well as any related appeals; all motions shall be addressed to this panel.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 *
 The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 21
 
 
 [1]
 The court also "reserve[d] jurisdiction to make further orders concerning utilization, provider outreach, any other subject at issue in this proceeding, or any matter related thereto" and, in his final judgment, "reserve[d] jurisdiction to modify and enforce the terms of this judgment"